UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------X
HILDA R. MARRERO,

                Plaintiff,          07 Civ. 7713(DAB)(DFE)

      -against-              <u>REPORT AND RECOMMENDATON</u>
                                         <u>TO JUDGE BATTS</u>
MICHAEL J. ASTRUE,
Commissioner of Social Security,     (This is not an ECF case)

                Defendant.
---------------------------------X

DOUGLAS F. EATON, United States Magistrate Judge.

     Plaintiff Hilda R. Marrero brought this *pro se* lawsuit
pursuant to 42 U.S.C. § 405(g).  She sought judicial review of a
final decision of the Commissioner of Social Security denying her
application for Supplemental Security Income ("SSI") payments.
The Complaint, at page 1, alleges that she has been unable to
work since March 2001 because she suffers from a "depressive
disorder."  In the Administrative Record ("Tr."), she also
mentioned a "S/P left breast lumpectomy, benign."  (Tr. 48, 57,
64.)

     On May 14, 2004, plaintiff filed an application for SSI.
(Tr. 48-51.)  The application was denied upon initial review.
(Tr. 23-24.)  Plaintiff then requested a hearing before an
Administrative Law Judge ("ALJ").  (Tr. 26-27.)  On April 4,
2006, plaintiff attended a hearing before ALJ Roy P. Liberman in
Manhattan.  Also participating were a Spanish interpreter and
plaintiff's non-attorney representative, Tanza Pettiford from the
City Human Resources Administration.  (Tr. 17, 261-81.)

     In a decision dated September 1, 2006, ALJ Liberman
determined that plaintiff suffers from depression but is not
disabled within the meaning of the Social Security law and
regulations.  (Tr. 17-22.)  On March 15, 2007, the Appeals
Council denied review of the ALJ's decision; hence it become the
final decision of the Commissioner.  (Tr. 4-6.)

     On May 9, 2007, plaintiff filed this lawsuit in the Brooklyn
courthouse of the U.S. District Court for the Eastern District of
New York.  On August 29, 2007, the case was transferred to our
Court, where it was assigned to Judge Batts.  On October 19,
2007, Judge Batts referred it to me to write a Report and
Recommendation on any motions.

On December 3, 2007, the Commissioner served his Answer and a copy of the 281-page Administrative Record.  (Doc # 5)  By letter dated July 9, 2008, Assistant U.S. Attorney ("AUSA") Leslie Ramirez-Fisher wrote to me:

> The parties have conferred and respectfully propose the following briefing schedule for this case: Defendant will file his motion for judgment on the pleadings by August 8, 2008.  Plaintiff pro se will file her opposition by September 8, 2008.  Defendant will file his reply, if any, by September 29, 2008.

On July 10, 2008, I approved that briefing schedule with a handwritten endorsement.  (Doc # 6.)

On August 8, 2008, AUSA Ramirez-Fisher filed a Notice of Motion for Judgment on the Pleadings (Doc # 7) and a Memorandum of Law in Support (Doc # 8).  Plaintiff did not serve any opposition papers.  On April 14, 2009, I issued a Memorandum and Order (Doc #9) that said, in part:

> **I will give Ms. Marrero one last chance to submit opposition papers.**  If Ms. Marrero did not receive copies of the Defendant's 2-page Notice of Motion and the 22-page Memorandum of Law, then she should write to AUSA Ramirez-Fisher by April 24, 2009 (with a courtesy copy to me) and ask AUSA Ramirez-Fisher to mail her another set of the Defendant's papers.

> **I direct Ms. Marrero to serve and file her opposition papers on or before May 29, 2009.**  "Serve" means ....

>         *     *     *

> I realize that Ms. Marrero does not have an attorney.  Therefore, I will read her papers with extra sympathy.  If she has any questions about today's Memorandum and Order, then she can contact the Pro Se Office at the United States Courthouse at 500 Pearl Street, Room 230, New York, New York 10007.  The telephone number for the Pro Se Office is (212) 805-0175.  The Pro Se Office can advise her about procedure, but it cannot give legal advice about the substance of the case, and it cannot write any papers for her.

I mailed a copy of my Memorandum and Order to plaintiff, and the Postal Service did not return it.  To date, plaintiff has still

not filed any opposition papers.

For the reasons set forth in today's Report, I find that the Administrative Record contains substantial evidence to support the decision of the ALJ and the Commissioner.  I recommend that Judge Batts grant the Commissioner's motion for judgment on the pleadings.  If Ms. Marrero does not send a timely objection to Judge Batts, then Judge Batts may consider dismissing the Complaint with prejudice for a separate reason: for plaintiff's failure to prosecute her lawsuit.  See Rule 41(b) of the Federal Rules of Civil Procedure.

Plaintiff was born on August 1, 1953.  She has a General Education Diploma, which she received in Spanish in New York City.  She can read and write in Spanish, and understands "a little bit" of English.  (Tr. 18, 264-66.)  The last job she held was as an office cleaner in Puerto Rico, apparently in 2000, 2001 and 2002.  (Tr. 266-67, citing Tr. 55.)  Before then, she worked as a home attendant for the Bronx Jewish Community Council.  As a home attendant, she cared for sick and elderly people at their homes.  She would cook meals for them and clean their homes. (Tr. 18, 266-67.)

During the April 4, 2006 hearing, plaintiff testified that she had stopped working because she suffered from depression. She said that she became depressed after she learned about certain misconduct by her husband in 1999, apparently in Puerto Rico.  Soon after that discovery, she separated from her husband. At Tr. 265, she testified that she is "going to get divorced." At Tr. 274, she testified that she "put a lawsuit over there [in Puerto Rico].  But he fled from there."

She lives with her adult daughter.  (Tr. 271-72.)  She continues to be treated for depression with group psychotherapy and medication at the Fordham-Tremont Community Mental Health Center.  (Tr. 267-70; see also 254.)  At the end of the hearing, the following occurred:

ALJ: Ms. Antonio ... makes her sound very different from how she looks today.  [Tr. 256: "] According to client she's able to follow through on activities of daily life with minimal impairment.  In regards to chores, household matters, transportation, grooming,["] she certainly doesn't make her sound like the way she looks today.

REP: Are you, all right, you're referring to --

ALJ: I'm looking at page, I'm reading from page 3 of

-3-

Ms. Antonio's report.  The top of the page, activities
of daily living.  [Tr. 256.]  On the first page [Tr.
254] she says cooperative, good eye contact.  It
mentions a depressed affect but, doesn't, doesn't sound
like, she looks pretty bad today.

                    *    *    *

REP: Yeah, I would, I would like to get an RFC from her
psychiatrist.

ALJ: All right, let me give you ten days....

(Tr. 278-80.)  However, it appears that plaintiff's
representative was unable to obtain an updated report about
plaintiff's Residual Functional Capacity, or perhaps was unable
to obtain one that would be helpful to plaintiff.

     In his September 1, 2006 decision (Tr. 17-22), the ALJ
discussed plaintiff's exertional (physical) condition and her
non-exertional (mental and emotional) condition.  He wrote that
she retains the residual functional capacity to "perform all
exertional levels of work and, non-exertionally, is capable of
basic entry-level tasks not involving more than moderate work
pressures and demands."  (Tr. 21.)  He also wrote:

          It is obvious from this medical evidence that
     while the claimant is suffering some minimal depression
     and mental discomfort, choosing to spend a lot of her
     time alone, she is only mildly functionally limited and
     is quite capable of attention, concentration, and
     handling minimal to moderate work stresses.  The
     claimant's own treating sources have demonstrated
     little in the way of significant findings, noting among
     other things that she is perfectly capable of taking
     care of herself and handling activities of daily
     living, including cleaning and shopping.  The claimant
     is not on a significant medication regimen and, to the
     extent she takes medication, the record indicates that
     her symptoms have improved as a result.

(Tr. 20-21.)

     At Tr. 19-20, the ALJ summarized plaintiff's medical records
and the reports of the Commissioner's consultant.  Those records
support his findings.  In particular, I will quote the March 23,
2006 report submitted by plaintiff's treating therapist,
Elizabeth Antonio.  (Tr. 254-56.)  Less than two weeks before the
hearing, Ms. Antonio reported that plaintiff was "cooperative

[with] good eye contact, attentive and appropriate."  She also reported that plaintiff was depressed and tearful at times, but that her emotions were "appropriate to content."  (Tr. 254-55.) Moreover, she reported that plaintiff was "able to follow through on activities of daily life with minimal impairment in regards to chores, household management, transportation," and that her grooming was "fair - good, clean, appropriate."  (Tr. 256.)  Ms. Antonio reported that plaintiff had a "moderate impairment" in social functioning, but that "client describes positive, supportive relationship with [her] adult children."  (Tr. 256.)

The ALJ also found that plaintiff's past relevant work as a home attendant and as an office cleaner "did not require the performance of work-related activities precluded by her residual functional capacity."  (Tr. 22.)  That finding is supported by the following medical records:

(1) The June 21, 2003 Psychiatric Evaluation of Dr. Carol Bruni.  (Tr. 152-57, repeated at Tr. 202-06.) When asked to rate plaintiff on the Global Assessment of Functioning [GAF] Scale, Dr. Bruni selected the range of 61 to 70 ("Some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning ..., but generally functioning pretty well, has some meaningful interpersonal relationships.") (Tr. 157, repeated at Tr. 206.)

(2) The April 13, 2004 report of Tara Lodha, M.D., whose specialty is internal medicine.  (Tr. 137-38.) She wrote that plaintiff "is able to sit, stand, walk, lift, carry, handle objects, hear, speak and travel. [Plaintiff] is able to do light to moderate activities pending psychiatric evaluation."  (Tr. 138.)

(3) The October 15, 2004 Psychiatric Evaluation of Dr. Alain Delachapelle.  (Tr. 216-17.)  He wrote that plaintiff "has a satisfactory ability to understand, carry out, and remember instructions, and a satisfactory ability to respond appropriately to supervision, coworkers and work pressures in a work setting."  (Tr. 217.)

(4) The December 6, 2004 Mental Residual Functional Capacity Assessment of medical consultant Dr. Carlos Gieseken.  (Tr. 218-220.)  He wrote: "Based on the information in the file [plaintiff] retains the ability to perform low stress work despite mild depressive symptoms."  (Tr. 219.)

-5-

(5) The February 2, 2005 Medical Assessment of Dr.
Segundo Ruiz Belvis. (Tr. 239-42.) He reported that
the only physical limitations that affected plaintiff's
ability to do work-related activities were
environmental limitations. (Tr. 239-42.)

With respect to plaintiff's allegations that she could not
work because of her "S/P left breast lumpectomy, benign," the ALJ
found that:

The record contains some evidence of treatment for
relatively minor or short-lived physical medical
problems, such as fibrocystic breast disease.... There
is no documentation of a "severe" physical or
exertional impairment. (Tr. 19.)

That finding is supported by the medical evidence submitted at
Tr. 128-36, 137-38.

<u>CONCLUSION AND RECOMMENDATION</u>

I find that the Administrative Record contains substantial
evidence to support the decision of the ALJ and the Commissioner.
**I recommend that Judge Batts grant the Commissioner's motion for
judgment on the pleadings (Doc # 7).** If Ms. Marrero does not
send a timely objection to Judge Batts, then Judge Batts may
consider dismissing the Complaint with prejudice for a separate
reason: plaintiff's failure to prosecute her lawsuit.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the
Federal Rules of Civil Procedure, any party may object to this
recommendation within 14 calendar days after being served with a
copy **(i.e., no later than February 26, 2010)**, by filing written
objections with the Clerk of the U.S. District Court and mailing
copies (a) to the opposing party, and (b) to the Hon. Deborah A.
Batts, U.S.D.J. at Room 2510, 500 Pearl Street, New York, NY
10007. Failure to file objections within 14 calendar days will
preclude appellate review. *Thomas v. Arn*, 474 U.S. 140 (1985);
*Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16
(2d Cir. 1989) (per curiam); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P.
72, 6(a), and 6(e). Any request for an extension of time must be
addressed to the District Judge, Judge Batts.

DOUGLAS F. EATON
United States Magistrate Judge
United States Courthouse

-6-

500 Pearl Street, Room 1360
New York, New York 10007

Dated:     New York, New York
           February 9, 2010

Copies of this Report and Recommendation are being sent by mail to:

Hilda Marrero
975 East 181st Street, Apt. C
Bronx, New York 10460

Leslie A. Ramirez-Fisher, Esq.
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007

Pro Se Office
United States Courthouse
500 Pearl Street, Room 230
New York, New York 10007

Hon. Deborah A. Batts
United States District Judge
United States Courthouse
500 Pearl Street, Room 2510
New York, New York 10007